An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-615

Filed 5 August 2026

Mecklenburg County, No. 19CVD012928-590

JASON IDILBI, Plaintiff,

v.

BETSY HAUSER, Defendant.

Appeal by defendant from order entered 3 January 2025 by Judge Alyssa M. Levine in Mecklenburg County District Court. Heard in the Court of Appeals 11 February 2026.

> *Marcellino & Tyson, PLLC, by Jennifer P. Moore, for plaintiff-appellee.*
>
> *Lake Norman Law Firm, by Adam G. Breeding, for defendant-appellant.*

PER CURIAM.

In this matter, a mother appeals a trial court's order modifying a prior permanent child support order, arguing the trial court's findings supported by the evidence do not support its ultimate finding there had been a substantial change of circumstances warranting modification of the prior order. For the reasons stated herein, we affirm.

## I.    Background

Defendant Betsy Hauser ("Mother") and Plaintiff Jason Idilbi ("Father") married in September 2013, had four children during the marriage, separated in June 2019, and divorced in August 2020.  In October 2020, the trial court appointed a parenting coordinator, pursuant to N.C.G.S. § 50-91.  (In June 2022, the trial court entered an order appointing a new parenting coordinator.)

In June 2021, the trial court entered a permanent child custody order granting the parents joint legal and physical custody.  Relevant to this appeal, the order also granted Mother final decision-making authority on educational, medical, and religious decisions if the parents failed to agree on an issue following a good faith discussion, specifically directing the parties as follows:

> The parties shall discuss and attempt to agree on all education, medical, and religious decisions for the minor children.  Should the parties be unable to agree on such a decision, [Mother] shall have final major decision-making authority including but not limited to such issues as medical, educational, and health care issues.

Over the next few years, Mother made several unilateral decisions regarding the children, including changing the school they attended.

In October 2023, Father filed a motion seeking to, inter alia, modify legal custody for "true joint legal custody" of the four children, specifically seeking a greater role in the major decision-making process.  In his motion, Father alleged a substantial change in circumstances occurred based upon Mother's alleged abuse of her final

decision-making authority regarding the children's schooling and health. In short, Father argued either (1) Mother failed to discuss decisions concerning the children with him in violation of the 2021 order or (2) she discussed the issues with Father, the parties disagreed on those issues, and Mother "abused" her final decision-making authority and made a decision negatively impacting the children's welfare.

On 3 January 2025, after a hearing on the matter, the trial court entered a modified permanent child custody order and parenting coordinator appointment. The relevant change from the 2021 order to the modified 2025 order was replacing Mother's final decision-making authority with a provision requiring the parties to maintain the status quo regarding any major decision where there was disagreement, with the decision to be decided by the parenting coordinator. Mother appeals from the 2025 order.

## II. Standard of Review

Trial courts possess "broad discretion in child custody matters." *Shipman v. Shipman*, 357 N.C. 471, 474 (2003) (citation omitted). The trial court's findings are binding on appeal when supported by substantial evidence. *Pulliam v. Smith*, 348 N.C. 616, 625 (1998). Substantial evidence is evidence "a reasonable mind might accept as adequate to support a conclusion." *Shipman*, 357 N.C. at 474 (quoting *State v. Smith*, 300 N.C. 71, 78–79 (1980)). "In addition to considering whether the 'trial court's findings of fact are supported by substantial evidence, this Court must determine if the trial court's factual findings support its conclusions of law.' " *Durbin*

*v. Durbin*, 388 N.C. 55, 61 (2025) (quoting *Pulliam*, 348 N.C. at 625).

## III. Analysis

The burden is with Father, as the movant in the trial court, to show (1) a substantial change in circumstances impacting the welfare of the child and (2) the modification of the custody order is in the child's best interests. *Pulliam*, 348 N.C. at 619. Mother makes two arguments on appeal: (1) there was no showing of changed circumstances warranting a modification of the 2021 order and (2) the modification was not in the best interests of the children. We address each in turn.

### A. Change of Circumstances

Our General Statutes provide that a modification of a permanent child custody order is permissible only when there are "changed circumstances." N.C.G.S. § 50-13.7(a). Our Supreme Court has held there must be shown that there is a "nexus" between the change(s) and the welfare of any minor child. *Shipman*, 357 N.C. at 478. Changed circumstances impacting a child's welfare may be self-evident or more discreet. *Id.* Where the circumstances are discreet, such as one parent beginning cohabitation with a third-party, or one parent moving, etc., there must be findings based on evidence that shows *how* the change affected the welfare of the child. *Id.*

Our Supreme Court, however, has instructed that detailed findings concerning the nexus are not necessary where the nexus is "self-evident." *Id.* at 479. For instance, the nexus is self-evident where one parent violates the custody order by interfering pervasively with the other parent's visitation, thereby showing that the

interfering parent is acting contrary to the best of the child, warranting a change of custody. *Id.*

The trial court made extensive findings in its modification order, many of which are not challenged by Mother. For instance, unchallenged findings and findings supported by competent evidence show that Mother unilaterally decided to transfer the children to a hybrid, private school of which Mother started and was running. However, the school was lacking in many ways. And Mother was not forthcoming to Father but was deceptive concerning her involvement and leadership role in the school. Also, there were findings which tended to show that Mother made a number of other major decisions, primarily concerning the children's health, either without informing Father or before Father had a reasonable chance to respond.

To be sure, the parents have had a history of not getting along with regards to decision-making concerning the children. However, where there is evidence of acrimony between parents prior to the entry of a permanent custody order, the continued acrimony *after* the entry of a permanent custody order, in some cases, may serve as the basis of a court's later finding of a change of circumstances. *See, e.g.,* *Durbin v. Durbin*, 388 N.C. 55, 65 (2025).

Here, Mother's obligation in the 2021 order to discuss and attempt to come to an agreement with Father prior to making any major decision unilaterally includes a duty that she act in good faith. The findings, though, show she willfully violated her obligations in the 2021 order in many instances. The trial court did not err in

finding that these instances caused more acrimony between the parents, to the detriment of the children.

We have held that a parent's unilateral decision regarding the children's schooling in willful violation of a permanent custody order which causes increased acrimony may constitute a change of circumstances sufficient to warrant modification of the order. *Booker v. Strege*, 256 N.C. App. 172, 180 (2017). In *Booker*, we held that the nexus between the willful violation and the children's welfare was self-evident: "The trial court is not required to wait until the children have been damaged enough to receive a formal diagnosis of some mental condition or emotional disorder to intervene." *Id.* In so holding, we noted that "[t]he negative impact on the children is not from whether they attend this school or that school; the impact is from their parents' fighting with one another over important decisions all parents must make for their children." *Id.*

Likewise, here, the findings show that Mother has willfully violated the 2021 order by not acting in good faith in trying to come to an agreement with Father when making major decisions. This is *not* because she made decisions that were contrary to Father's wishes on many occasions, as this was her right under the 2021 order. Rather, it is because she was deceptive in some instances and did not allow or reasonably wait for Father's input as to other major decisions. The trial court found these instances caused unneeded conflict between the parents, to the detriment of the children.

In sum, based on our review of the order and the record before us, we conclude there were sufficient findings, either unchallenged or otherwise supported by competent evidence, to support the trial court's ultimate finding that there was a change of circumstances warranting a modification of the 2021 permanent order.

B. **Best Interests of the Children**

A trial court is afforded broad discretion in making a best-interest determination regarding child custody. *Pulliam*, 348 N.C. at 631 (best-interest determination "cannot be overturned absent a showing of an abuse of discretion").

Here, we have reviewed the order and conclude Mother has failed to meet her high burden of showing how the trial court abused its discretion in modifying the 2021 order by removing from her ultimate decision-making authority over major decisions concerning the children and giving that authority, absent agreement between the parents, to the parenting coordinator.

AFFIRMED.

Panel Consisting of Chief Judge DILLON and Judges FLOOD and FREEMAN.

Report per Rule 30(e).